771 So.2d 1143 (2000)
David R. MAY, as Administrator Ad Litem of the Estate of Oscar T. Bradley, deceased, Appellant,
v.
ILLINOIS NATIONAL INSURANCE COMPANY, Appellee.
No. SC96652.
Supreme Court of Florida.
November 16, 2000.
*1144 Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, Florida; Robert J. Mayes, Gulf Breeze, Florida; and Lefferts L. Mabie, III of Lefferts. L. Mabie, *1145 III, P.A., Tampa, Florida, for Appellant.
B. Richard Young and Michael T. Bill of Young and Associates, P.A., Pensacola, Florida, for Appellee.
Robert W. Goldman and Brian J. Felcoski of Goldman & Felcoski, P.A., Naples, Florida, for Real Property Probate & Trust Law Section of The Florida Bar, Amicus Curiae.
LEWIS, J.
We have for review a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit as determinative of a cause pending before that court and for which there is no controlling precedent. Specifically, the Eleventh Circuit has certified the following question to this Court:

WHETHER SECTION 733.702 AND SECTION 733.710 OF THE FLORIDA STATUTES CONSIDERED SEPARATELY AND/OR TOGETHER OPERATE AS STATUTES OF NON-CLAIM SO THAT IF NO STATUTORY EXCEPTION EXISTS, CLAIMS NOT FORMALLY PRESENTED WITHIN THE DESIGNATED TIME PERIOD ARE NOT BINDING ON THE ESTATE, OR DO THEY ACT AS STATUTES OF LIMITATIONS WHICH MUST BE PLEADED AND PROVED AS AFFIRMATIVE DEFENSES IN ORDER TO AVOID WAIVER.
May v. Illinois Nat'l. Ins. Co., 190 F.3d 1200, 1208 (11th Cir.1999). In phrasing such question, the Eleventh Circuit stated that it did not intend to limit our consideration of the issue presented or the manner in which we give our answer. See id. at 1208. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. As explained below, we determine that section 733.702, Florida Statutes (1991), is a statute of limitations that cannot be waived in a probate proceeding by failure to object to a claim on timeliness grounds, while section 733.710, Florida Statutes (1991), is a jurisdictional statute of nonclaim that is not subject to waiver or extension in a probate proceeding.

I. FACTS AND PROCEDURAL HISTORY
On September 21, 1991, a motor vehicle driven by Donald J. Prockup, Sr., in which his wife, Inez Prockup, was a passenger, was involved in a collision with a motor vehicle driven by Oscar T. Bradley and owned by Velma Murphy, his niece. At the time of the accident, Mr. Bradley maintained an automobile liability insurance policy issued by Illinois National Insurance Company (INIC), with policy limits of $10,000 per person and $20,000 per accident. Also at the time of the accident, Ms. Murphy, the owner of the vehicle driven by Mr. Bradley, had an automobile liability insurance policy issued by Atlanta Casualty Company (ACC), with policy limits of $10,000 per person and $20,000 per accident, which provided coverage for operation of the vehicle involved in the collision. Mr. Bradley and Mrs. Prockup died as a result of the accident-Mr. Bradley died at the scene-and Mr. Prockup sustained non-fatal personal injuries.
On May 15, 1992, Mr. Prockup, individually, and as personal representative of his wife's estate, filed suit in the Circuit Court in and for Escambia County, Florida, seeking recovery of damages for both the wrongful death of his wife and for his own personal injuries. The suit was initiated against Ms. Murphy and Mr. David R. May, "as personal representative of the Estate of Oscar T. Bradley, deceased." On May 20, 1992, five days after filing the wrongful death/personal injury action, Mr. Prockup filed a "Petition for Appointment of Administrator Ad Litem" pursuant to section 733.308, Florida Statutes (1991), and Florida Probate Rule 5.120(a), in the probate division of the Circuit Court in and for Escambia County, Florida (the probate court). The file number assigned to the case upon the filing of such petition was 92-656-CP-3, in division "K" of the *1146 circuit court. The file number remained the same throughout the probate proceedings involving the Bradley Estate, while the division designation changed to "J" upon issuance of the letters of administration for the estate.
In the petition, Mr. Prockup requested that the probate court appoint Mr. May as administrator ad litem of Mr. Bradley's estate (the Bradley Estate), and he set forth in detail in the petition that (1) he represented his wife's estate; (2) Mr. Bradley died on September 21, 1991, and no personal representative had been appointed for the Bradley Estate; (3) he had been unable to determine Mr. Bradley's next of kin or whether Mr. Bradley left a last will and testament; and (4) he had "a cause of action which arose out of an accident in Holmes County, Florida, on September 21, 1991, in which Inez Prockup sustained fatal injuries. The van in which Mrs. Prockup was a passenger was struck by an automobile driven by Oscar T. Bradley." The petition, verified under oath by Mr. Prockup, also provided the addresses of Mr. May and Mr. Lefferts L. Mabie, III, attorney for Mr. Prockup. On May 26, 1992, the probate court issued an order appointing Mr. May administrator ad litem of the Bradley Estate, "to represent the estate in the action against the estate which arose out of an accident on September 21, 1991, in which Inez Prockup sustained fatal injuries."
On June 18, 1992, counsel retained by Ms. Murphy's insurer, ACC, filed an answer in the wrongful death/personal injury action on behalf of both Ms. Murphy and Mr. May. However, INIC did not provide a defense and disputed coverage throughout the proceedings.[1] In addition to a general denial of negligence, the answer set forth only the affirmative defenses of comparative fault, fault of third parties, failure to use seat belts, and setoff for collateral sources. The parties subsequently entered into a stipulation in which the defendants, both Ms. Murphy and Mr. May on behalf of the Bradley Estate, admitted liability,[2] and the case was then submitted to a special master for a determination of damages. After conducting a trial concerning damages on March 18, 1994, the special master entered "Findings of Fact and Verdict of Special Master" on April 14, 1994, determining that (1) Mrs. Prockup's estate suffered damages in the amount of $81,522.73; (2) Mr. Prockup suffered damages resulting from the wrongful death of his wife in the amount of $850,000; and (3) Mr. Prockup suffered damages for his own personal injuries in the amount of $175,000. On April 21, 1994, the circuit court entered judgment in favor of Mr. Prockup, individually, and as personal representative of his wife's estate, for the amounts determined by the special master, totaling $1,106,522,70, against both Ms. Murphy and Mr. May, "as personal representative of the estate of Oscar T. Bradley, deceased."
After the circuit court entered final judgment in the wrongful death/personal injury suit, Mr. Prockup executed a release as to only Ms. Murphy and ACC in exchange for payment of ACC's $20,000 policy limit. INIC and the Bradley Estate were specifically excluded from the release. At the same time, Mr. Prockup and ACC entered into a "loan agreement" in which ACC agreed to lend Mr. Prockup $280,000. Repayment of the loan was contingent upon Mr. Prockup being successful *1147 in a subsequent bad faith action against INIC. The loan agreement specifically provided that if Mr. Prockup was successful in the bad faith action against INIC, he would then repay the full amount of the loan and ACC would pay his attorney $70,000 in attorney's fees. If the bad faith action was unsuccessful, however, Mr. Prockup would not be required to repay the $280,000 loan and ACC would pay Mr. Prockup an additional $256,000. The record is silent as to whether Mr. Prockup has separately attempted to pursue any litigation against INIC.[3]
Meanwhile, during the pendency of the proceedings in the wrongful death/personal injury action, several events occurred in the probate case involving the Bradley Estate. Specifically, on February 4, 1993, Emmer Bell Johnson, one of Mr. Bradley's nieces, filed a petition for administration requesting that the probate court appoint her personal representative of the Bradley Estate. Mr. Prockup and Mr. May were provided written notice of Ms. Johnson's petition, and on March 1, 1993, Mr. Prockup filed a pleading containing an answer, affirmative defenses, and a counter-petition for administration (collectively "the counter-petition for administration") in which he requested that the probate court appoint Mr. May personal representative of the Bradley Estate. In support of the counter-petition for administration, Mr. Prockup specifically and in detail asserted that (1) the probate court already had appointed Mr. May administrator ad litem of the Bradley Estate to defend against "an action against the estate arising out of the accident on September 21, 1991"; and (2) Mr. Prockup was a "creditor" of the Bradley Estate "by virtue of a wrongful death claim ... which arose out of an automobile accident in Holmes County, Florida, on September 21, 1991," resulting in "fatal injuries" to Mrs. Prockup. Thereafter, on March 18, 1993, Mr. Bradley's nephew, Fred Bradley, also petitioned the probate court to appoint him personal representative of the Bradley Estate. After conducting a hearing on the pending petitions, the probate court appointed Ms. Johnson and Mr. Fred Bradley as co-personal representatives of the Bradley Estate by order dated July 23, 1993.[4] After their appointment, the co-personal representatives never sought to remove Mr. May as administrator ad litem of the Bradley Estate, and the probate court never entered an order to that effect. Further, Mr. Prockup never substituted the new co-personal representatives for Mr. May in the wrongful death/personal injury action pending against Ms. Murphy and the Bradley Estate.[5]
*1148 On August 23, 1993, the probate court issued letters of administration to the co-personal representatives, who in turn published a notice of administration in The Escambia Sun-Press on September 2, 1993, and September 9, 1993.[6] On December 27, 1993, more than three months after first publication of notice of administration and more than two years after Mr. Bradley's death, Mr. Prockup filed in the Bradley Estate probate proceedings a verified document entitled "Statement of Claim." Using language identical to that which had been previously set forth in the petition for the appointment of an administrator ad litem, Mr. Prockup's "Statement of Claim" provided that it was a "[c]laim for damages which arose out of an accident in Holmes County, Florida, on September 21, 1991, in which Inez Prockup sustained fatal injuries. The van in which Inez Prockup was a passenger was struck by an automobile driven by Oscar T. Bradley." The statement also set forth (1) Mr. Prockup's address; (2) that the amount of the claim was undetermined; (3) that the claim was unliquidated; and (4) the claim was unsecured.
In response to the "Statement of Claim" filed by Mr. Prockup, the co-personal representatives filed a proof of claim on February 22, 1994, indicating their intention to honor Mr. Prockup's claim in an "undetermined" amount. The co-personal representatives served the proof of claim on various individuals, including heirs of the Bradley Estate, on February 23, 1994. Later, on September 23, 1994, the co-personal representatives petitioned for discharge from the Bradley Estate, and Mr. Prockup and Mr. May received notice of the petition for discharge. As part of the plan for distribution of the assets of the Bradley Estate, the co-personal representatives proposed to pay Mr. Prockup $2,648.44 in relation to his claim as personal representative of Mrs. Prockup's estate. Neither Mr. Prockup nor Mr. May objected to the petition for discharge or the proposed distribution plan. Mr. Prockup accepted payment of $2,648.44 and executed a receipt acknowledging the distribution on December 5, 1994. On January 20, 1995, the probate court entered an order requiring the co-personal representatives to file an order of discharge, and the order requiring filing was furnished by mail to counsel for Mr. Prockup on January 29, 1995. Finally, on June 23, 1995, the probate court entered an order discharging the co-personal representatives from the Bradley Estate.
At the conclusion of both the wrongful death/personal injury proceedings and the probate proceedings, Mr. May, as administrator ad litem of the Bradley Estate, filed a bad faith action against INIC in the Circuit Court in and for Escambia County, *1149 Florida. Based on diversity of citizenship, INIC removed the bad faith action to the United States District Court for the Northern District of Florida, Pensacola Division. Before doing so, however, INIC paid $21,348.90 into the registry of the circuit court, an amount equal to Mr. Bradley's automobile liability insurance policy limits plus post-judgment interest.
In federal court, INIC then proceeded to move for the entry of a summary judgment, primarily arguing that because Mr. Prockup did not file a pleading entitled "Statement of Claim" in the probate proceedings until over two years after Mr. Bradley's death and over three months after first publication of the notice of administration, the Bradley Estate was not obligated to satisfy the judgment obtained by Mr. Prockup in the wrongful death/personal injury action. INIC in turn had no obligation because the Bradley Estate had no liability. INIC relied on the time limits established in sections 733.702 and 733.710, Florida Statutes (1991), in making this argument. With no liability on the part of the Bradley Estate for payment of the judgment, INIC argued, no bad faith action could lie against INIC.
Mr. May opposed INIC's motion for summary judgment on various grounds, arguing that (1) Mr. Prockup's counter-petition for administration filed in the Bradley Estate probate proceedings satisfied the requirements of section 733.703, Florida Statutes (1991), and provided sufficient notice of the claim in satisfaction of sections 733.702 and 733.710; (2) the co-personal representatives of the Bradley Estate waived the time limitations established by sections 733.702 and 733.710 by failing to raise Mr. Prockup's noncompliance with those statutes as an affirmative defense in the wrongful death/personal injury action filed against the Bradley Estate, by filing a proof of claim in the probate court, and by making partial payment of the claim; and (3) even if the Bradley Estate was not liable for the excess judgment, the administrator ad litem nonetheless could maintain a bad faith action and recover the excess judgment from INIC because the potential bad faith claim was an asset of the Bradley Estate that the estate's representatives were obligated to collect on behalf of creditors.
After considering the parties' arguments, the federal district court granted summary judgment in favor of INIC. In granting INIC's motion, the trial court determined that Mr. Prockup had failed to timely file a sufficient statement of claim in the Bradley Estate proceedings in accordance with the Florida Probate Code. The court specifically concluded that Mr. Prockup's counter-petition for administration did not constitute a valid "Statement of Claim" under the Florida Probate Code or the Florida Probate Rules. The lower court also determined that section 733.710 barred recovery against the Bradley Estate even though the statute was not raised as an affirmative defense. Finally, the court determined that, even assuming the statutory bar of section 733.710 was waived if not raised as an affirmative defense, Mr. May still could not maintain the bad faith action against INIC because the Bradley Estate had been settled, final distribution had been made, and the co-personal representatives had been discharged.
On appeal, the Eleventh Circuit affirmed the district court's entry of summary judgment, in part, and certified a question of Florida law to this Court. In partially affirming the summary judgment, the Eleventh Circuit held that (1) Mr. May's position that an excess judgment action could be maintained against INIC without Mr. Prockup having perfected a claim under the Florida Probate Code lacked merit; (2) the petition for appointment of an administrator ad litem and the counter-petition for administration, both filed by Mr. Prockup in the Bradley Estate probate proceedings, did not state a sufficient claim under the Florida Probate Code or the Florida Probate Rules; and (3) neither the co-personal representatives' failure to file an objection to Mr. Prockup's claim *1150 nor its partial payment of Mr. Prockup's claim constituted a waiver of the time period set forth in section 733.702(1). See May, 190 F.3d at 1203-06. The court then certified the question now before this Court for consideration, noting that there is a conflict in the case law of Florida regarding the question. See id. at 1207-08. We now analyze the question posed.

II. ANALYSIS
The Eleventh Circuit has asked us to determine the nature of sections 733.702 and 733.710, Florida Statutes.[7] As discussed below, after reviewing the plain language of the statutes, Florida case law, and various actions taken by the Florida Legislature in relation to the Florida Probate Code, we determine that section 733.702 is a statute of limitations that cannot be waived in the probate proceedings by failure to assert the statute in an objection, while section 733.710 is a jurisdictional statute of nonclaim that is not subject to waiver or extension in the probate proceedings.

A. SECTION 733.702
Section 733.702, Florida Statutes (1991), sets forth in pertinent part:
(1) If not barred by s. 733.710, no claim or demand against the decedent's estate that arose before the death of the decedent ... is binding on the estate, on the personal representative, or on any beneficiary unless filed within the later of 3 months after the time of the first publication of the notice of administration or, as to any creditor required to be served with a copy of the notice of administration, 30 days after the date of service of such copy of the notice on the creditor, even though the personal representative has recognized the claim or demand by paying a part of it or interest on it or otherwise....
(2) No cause of action heretofore or hereafter accruing ... shall survive the death of the person against whom the claim may be made, whether an action is pending at the death of the person or not, unless the claim is filed within the time periods set forth in this part.
(3) Any claim not timely filed as provided in this section is barred even though no objection to the claim is filed on the grounds of timeliness or otherwise unless the court extends the time in which the claim may be filed. Such an extension may be granted only upon grounds of fraud, estoppel, or insufficient notice of the claims period. No independent action or declaratory action may be brought upon a claim which was not timely filed unless such an extension has been granted. If the personal representative or any other interested person serves on the creditor a notice to file a petition for an extension or be forever barred, the creditor shall be limited to a period of 30 days from the date of service of the notice in which to file a petition for extension.
. . . .
(5) Nothing in this section shall extend the limitations period set forth in s. 733.710.
In analyzing the nature of section 733.702, we begin with a review of Barnett Bank v. Estate of Read, 493 So.2d 447 (Fla.1986), because in that case, we were called upon to determine "whether the three-month limitation period in section 733.702 is a jurisdictional statute of nonclaim or a statute of limitations." Id. at 448. In sum, if nothing has changed since we decided Barnett Bank, then that decision controls our *1151 determination here regarding section 733.702.
The decedent in Barnett Bank died on April 5, 1983, and the notice of administration for his estate was published on April 29, 1983. See 493 So.2d at 448. Shortly thereafter, the personal representative of the estate met with several Barnett Bank officials regarding a $100,000 promissory note that the decedent had executed in favor of the bank prior to his death. See id. The personal representative assured the bank officials that the estate would pay the note without the bank having to file a formal claim, and the personal representative confirmed that assurance in a follow-up letter to one of the bank officials. See id. Despite these assurances, however, the estate did not pay on the note, and as a result, on February 17, 1984, Barnett Bank filed a statement of claim to collect on the note. See id. The personal representative did not respond to the bank's claim, and the probate court ordered the personal representative to satisfy the note. See id. The Fourth District reversed on appeal, holding that the probate court had no authority to order payment on the note because Barnett Bank did not file its statement of claim within three months of first publication of the notice of administration as required by section 733.702(1)(a), Florida Statutes (1983), which provided in pertinent part:
(1) No claim or demand against the decedent's estate that arose before the death of the decedent ... shall be binding on the estate, on the personal representative, or on any beneficiary unless presented:
(a) Within 3 months from the time of the first publication of the notice of administration, even though the personal representative has recognized the claim or demand by paying a part of it or interest on it or otherwise.
We reviewed the Fourth District's decision, noting the important difference between a statute of limitations and a jurisdictional statute of nonclaim:
An untimely claim filed pursuant to a jurisdictional statute of nonclaim is automatically barred. Miller v. Nolte, 453 So.2d 397 (Fla.1984). However, a claim filed beyond the time set forth in a statute of limitations is only barred if the statute of limitations is raised as an affirmative defense or, if the defense appears on the face of a prior pleading, by way of a motion to dismiss. Fla. R. Civ. P. 1.110(d). Failure to plead that the statute of limitations has expired constitutes waiver.
Barnett Bank, 493 So.2d at 448. Upon reviewing the above-quoted provisions of section 733.702, Florida Statutes (1983), we held that section 733.702 "is a statute of limitations." Barnett Bank, 493 So.2d at 448. In so holding, we stated:
We fully recognize the strong public policy in favor of settling and closing estates in a speedy manner. Estate of Brown, 117 So.2d 478 (Fla.1960). However, as the facts of this case demonstrate, justice requires us to hold that section 733.702 is a statute of limitations. Valid grounds, such as estoppel or fraud, may exist that would and should excuse untimely claims. A creditor would lose the right to assert these potentially valid claims were we to hold that section 733.702 is a statute of nonclaim. Our holding that section 733.702 is a statute of limitations confirms the fact that estates and creditors must adhere to well-established practices when dealing with untimely claims. The estate must file a motion to strike or other objection to an untimely claim. If the creditor wishes to raise the issue of estoppel or fraud he may file a reply pursuant to Florida Rule of Civil Procedure 1.100. See Picchione v. Asti, 354 So.2d 954 (Fla. 3d DCA 1978). This procedure guarantees that claims such as fraud and estoppel are properly adjudicated.
Barnett Bank, 493 So.2d at 449. In light of such holding, we reinstated the probate court's order requiring the personal representative to satisfy the promissory note, *1152 given the estate's failure to assert the statute of limitations in an objection in the probate proceedings.[8]
In Spohr v. Berryman, 589 So.2d 225 (Fla.1991), we were again called upon to interpret the provisions of section 733.702, Florida Statutes, with the 1985 version of the statute being applicable in that case. After setting forth the relevant terms of section 733.702, we referred to Barnett Bank and stated, "While known as a statute of nonclaim, [section 733.702] is nevertheless a statute of limitations." Spohr, 589 So.2d at 227; see also Olenek v. Bennett, 537 So.2d 160, 161 (Fla. 5th DCA 1989) (citing Barnett Bank for the proposition that section 733.702, Florida Statutes (1985), was a statute of limitations). We then proceeded to determine that (1) the plaintiffs in the case were required to file a statement of claim against the estate concerning a marriage settlement agreement executed by the decedent before his death; and (2) the filing of a lawsuit against the personal representative of the estate within the three-month time period set forth in section 733.702 did not constitute compliance with the probate claim requirements of that statute. See Spohr, 589 So.2d at 227-29.
In 1988, the Legislature amended section 733.702, Florida Statutes. See ch. 88-340, § 6, at 1805-06, Laws of Fla. Of particular importance to the present case, the Legislature added the following pertinent language to the statute:
Any claim not timely filed as provided in this section is barred even though no objection to the claim is filed on the grounds of timeliness or otherwise unless the court extends the time in which the claim may be filed. Such an extension may be granted only in the estate administration proceeding, only after notice, and only upon grounds of fraud or estoppel. No independent action or declaratory action may be brought upon a claim which was not timely filed unless such an extension has been granted.
Id. This amendment clearly addressed the policy concerns we expressed in Barnett Bank, in that the amended language allows for an extension of the time limitation on the grounds of fraud or estoppel. Indeed, legislative history shows that the Legislature added the above-quoted language to section 733.702 in response to our decision in Barnett Bank, with the intent to make the statute "an absolute bar" to untimely filed claims, subject to an extension of the time limitation on the grounds of fraud or estoppel. See Fla. H.R. Comm. on Jud., HB 645 (1988), Staff Analysis & Economic Impact Statement 6 (April 7, 1988) (on file with comm.).
In 1989, the Legislature again amended section 733.702, Florida Statutes. See ch. 89-340, § 5, at 2178-79, Laws of Fla. Among other things, the Legislature added "insufficient notice of the claims period" as a basis for extending the time limitation under section 733.702. See id. Through this amendment, the Legislature obviously responded to the United States Supreme Court's decision in Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), wherein the Court held that due process requires that actual notice of the claims period be provided to reasonably ascertainable *1153 creditors. See id. at 489-91, 108 S.Ct. 1340. Indeed, legislative history shows that the Legislature undertook many changes to the Florida Probate Code in response to the Pope decision. See Fla. H.R. Comm. on Jud., HB 1408 (1989), Staff Analysis & Economic Impact Statement 2, 6 (final June 15, 1989) (on file with comm.).
Based on to the amendments to section 733.702 discussed above, several district courts of appeal in Florida have determined that the statute now bars untimely claims, even in the absence of an objection, unless an extension is granted. See Comerica Bank & Trust, F.S.B. v. SDI Operating Partners, L.P., 673 So.2d 163, 166 (Fla. 4th DCA 1996) ("It is apparent that section 733.702(3) is unlike an ordinary statute of limitations in that it contains express language barring untimely claims without any necessity for the [personal representative] to object to the tardiness in filing." (footnote omitted)); HCA New Port Richey Hospital v. Estate of Boschelli, 588 So.2d 1012, 1013 (Fla. 2d DCA 1991) (noting that since this Court decided Barnett Bank, the Legislature amended section 733.702 to make the statute "a bar to untimely filed claims, even in the absence of an objection, unless the court grants an extension"). Similarly, several district courts have relied on amendments to section 733.705, Florida Statutes, made by the Legislature in 1984 and 1986,[9] to support a finding that section 733.702 now operates as a jurisdictional statute of nonclaim, not a statute of limitations. See In re Estate of Parson, 570 So.2d 1125, 1125-26 (Fla. 1st DCA 1990); Baptist Hospital of Miami, Inc. v. Carter, 658 So.2d 560, 563 (Fla. 3d DCA 1995) (relying on reasoning of Estate of Parson); Wylie v. Inv. Mgmt. & Research, Inc., 629 So.2d 898, 902 (Fla. 4th DCA 1993) (same), receded from on other grounds, Corporate Secs. Group v. Lind, 753 So.2d 151 (Fla. 4th DCA 2000); Thames v. Jackson, 598 So.2d 121, 123 (Fla. 1st DCA 1992) (same).
After considering the relevant changes made to chapter 733, Florida Statutes, we hold that section 733.702(3), Florida Statutes (1991), operates to bar untimely claims against an estate even if the time period set forth in section 733.702(1) is not asserted in an objection in the probate proceedings on the basis of timeliness. However, given the fact that the time period set forth in section 733.702(1) may be extended based on fraud, estoppel, or insufficient notice, we continue to hold, as we did in Barnett Bank, that section 733.702 is a statute of limitations, as a true jurisdictional statute of nonclaim could not be extended. See, e.g., Barnett Bank, 493 So.2d at 449 (determining that creditors would lose the right to assert valid claims, even if estoppel or fraud existed, "were we to hold that section 733.702 is a statute of nonclaim"); Comerica, 673 So.2d at 166 (stating that "jurisdictional statutes of nonclaim operate to bar untimely claims without any action by the opponent and deprive the court of the power to adjudicate them").
Further, while we determine that section 733.702 operates to bar untimely claims against an estate even if not asserted in an objection in the probate proceedings, we agree with Mr. May that the time period set forth in section 733.702(1) is waived in a separate action outside of the probate proceedings if not raised as an affirmative defense.[10] This is so because *1154 the non-waiver provision contained in section 733.702(3) is, by its own terms, limited to the probate context. See § 733.702(3), Fla. Stat. (1991). Such waiver in a separate action does not necessarily render a judgment obtained in that action recoverable from an estate, however, because section 733.706, Florida Statutes (1991), provides:
Except upon approval by the court, no execution or other process shall issue on or be levied against property of the estate. An order approving execution or other process to be levied against property of the estate may be entered only in the estate administration proceeding. Claims on all judgments against a decedent shall be filed in the same manner as other claims against estates of decedents. This section shall not be construed to prevent the enforcement of mortgages, security interests, or liens encumbering specific property.
See also Smith v. Fechheimer, 124 Fla. 757, 763, 169 So. 395, 397 (1936) ("A statute giving a remedy for the collection of claims against the estates of deceased persons and fixing a time for their presentation to the court furnishes the exclusive remedy for the collection of such claims."). As correctly determined by the Second District Court of Appeal in Hogan v. Howard, 716 So.2d 286, 288 (Fla. 2d DCA 1998), under section 733.706, "a judgment holder is not free to execute on estate property simply by virtue of the fact that she holds a judgment. The judgment holder must file a claim like any other claimant." Cf. Payne v. Stalley, 672 So.2d 822, 823-24 (Fla. 2d DCA 1995) (barring recovery from an estate for a judgment obtained in federal court, even though section 733.702 was not raised as a defense in the federal court action, where the claim filed in the probate proceedings was untimely). Thus, the ultimate result where an estate waives or does not affirmatively assert the protection of section 733.702 in a separate action and an adverse party obtains a judgment against the estate in that action, but has not filed a timely claim against the estate in the probate proceedings, is that the sole possibility for recovery against the estate is for the probate court to grant an extension of time for the filing of a claim on the grounds of fraud, estoppel, or insufficient notice. We are not aware of any extension or any post-judgment request for extension pending in any probate court. With this determination in mind, we now turn our attention to section 733.710.

B. SECTION 733.710
Section 733.710, Florida Statutes (1991), provides:
(1) Notwithstanding any other provision of the code, 2 years after the death of a person, neither the decedent's estate, the personal representative (if any), nor the beneficiaries shall be liable for any claim or cause of action against the decedent, whether or not letters of administration have been issued, except as provided in this section.
(2) This section shall not apply to a creditor who has filed a claim pursuant to s. 733.702 within 2 years after the person's death, and whose claim has not been paid or otherwise disposed of pursuant to s. 733.705.
(3) This section shall not affect the lien of any duly recorded mortgage or security interest or the lien of any person in possession of personal property *1155 or the right to foreclose and enforce the mortgage or lien.
In Carter, 658 So.2d at 561, the Third District held that section 733.710 is a statute of limitations and that fraud or misrepresentation may estop an estate from relying on the statute as a defense. Conversely, in Comerica, 673 So.2d at 168, the Fourth District certified conflict with the Third District's decision in Carter, concluding that section 733.710 "states an absolute bar-akin to a statute of repose-that the court lacks power to avoid." Id. at 164. Recently, in Lutheran Brotherhood Legal Reserve Fraternal Benefit Society v. Estate of Petz, 744 So.2d 596, 598 (Fla. 2d DCA 1999), the Second District aligned itself with the reasoning expressed by the Fourth District in Comerica and certified conflict with the Third District's decision in Carter.[11]See also Agency for Health Care Admin. v. Estate of Johnson, 743 So.2d 83, 88 (Fla. 3d DCA 1999) (Nesbitt, J., dissenting and concurring) (concluding that section 733.710 constitutes a jurisdictional statute of nonclaim or a statute of repose). After reading section 733.710 in pari materia with section 733.702, see Pezzi v. Brown, 697 So.2d 883, 886 (Fla. 4th DCA 1997) (stating that "sections 733.702 and 733.710, which relate to the same subject matter, should be read in pari materia"); see generally Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992), we find it clear that section 733.710 is a jurisdictional statute of nonclaim that is not subject to waiver or extension in the probate proceedings.
In Comerica, the trial court extended the two-year time period set forth in section 733.710, Florida Statutes, so that the plaintiff could file a statement of claim against the decedent's estate for alleged environmental pollution. See 673 So.2d at 164. On appeal, the Fourth District traced the development of section 733.710, noting that the Legislature amended the statute in 1989 as part of a "package of amendments" in "obvious response" to the United States Supreme Court's decision in Pope. See id.; ch. 89-340, Laws of Fla. The Fourth District then compared the terms of section 733.710 with the relevant terms of section 733.702. See Comerica, 673 So.2d at 165. After conducting this comparison, the Fourth District reasoned as follows:
The introductory adverbial phrase in section 733.702(1), "[i]f not barred by s. 733.710," means that the 2-year period of section 733.710 is paramount over the limitations period in section 733.702(1). Reading the two sections together, it appears that section 733.702 fixes the basic time frame for filing of claims in decedent's estates being probated in Florida, but section 733.710 sets an absolute deadline beyond which no claim may be entertained.
Knowing the effect of the Pope decision, it seems inescapable that the legislative intent for section 733.710 was to create a self-executing period of repose without significant action by the state itself, it must be notedfor all claims after the lapse of the 2-year period. In its own terms, it takes precedence over all other provisions in the probate code. At the same time, the text is formulated to extinguish any liability that the estate, the beneficiaries or the [personal representative] might have had for any claim or cause of action against the decedent. Hence, rather than merely fixing a period of time in which to file claims, as section 733.702 does, in reality it creates an immunity from liability arising from the lapse of the period stated. The only exception to section 733.710's immunity from liability is found within its own subsection (2), which exempts from the bar of subsection (1) claims that were actually filed within the 2 year period but as to which *1156 the [personal representative] has failed to make payment or file an objection.
We also take note of section 733.702(3), which states that:
"[a]ny claim not timely filed as provided in this section is barred even though no objection to the claim is filed on the grounds of timeliness or otherwise unless the court extends the time in which the claim may be filed." [e.s.]
It is apparent that section 733.702(3) is unlike an ordinary statute of limitations in that it contains express language barring untimely claims without any necessity for the [personal representative] to object to the tardiness in filing. At the same time, this subsection also contains authority for the probate court to extend the nonclaim period of section 733.702(1). The claimant must show fraud, estoppel or insufficient notice to empower the probate court to grant the extension. But the legislature was careful to add in section 733.702(5) that "nothing in this section shall extend the limitations period set forth in s. 733.710." There is no extension provision, moreover, in section 733.710. In fact, there is no authority anywhere in the probate code to extend the 2-year period of section 733.710.
Reading the limited grant of extension authority in section 733.702(3) to enlarge the section 733.710 period of repose would be contrary to the structure and text of part VII of the probate code. Enlarging the repose period would also frustrate the obvious purpose underlying section 733.710 to provide an absolute bar date on the estate's liability for claims in decedent's estates being probated in Florida. Paradoxically, it would tend to make section 733.710 all but indistinguishable from section 733.702.
. . . .
Clearly, section 733.710 creates a self-executing, absolute immunity to claims filed for the first time, as here, more than 2 years after the death of the person whose estate is undergoing probate. It does not depend on the [personal representative] timely objecting to a late claim, and the claimant cannot avoid it by showing, as he could for the nonclaim period under section 733.702, fraud or estoppel or insufficiency of notice. The absence of a provision authorizing enlargements of the repose period, together with the provision in section 733.702(5) negating any use of the enlargement provision to extend the repose period, make it clear to us that the lapse of the 2-year period erects an absolute jurisdictional bar to late-filed claims that the probate judge lacks the power to ignore. It obviously represents a decision by the legislature that 2 years from the date of death is the outside time limit to which a decedent's estate in Florida should be exposed by claims on the decedent's assets.
Comerica, 673 So.2d at 165-67 (footnotes omitted).
In reaching its conclusion that section 733.710 operates to automatically bar claims and is not subject to waiver or extension, the Comerica court disagreed with the reasoning employed by the Third District in Carter. In Carter, to support its holding that section 733.710 is a statute of limitations, the Third District noted that (1) section 733.710 is entitled, "Limitations on claims against estates"; (2) the legislative history of section 733.710 repeatedly refers to the statute as one of limitations; and (3) the statute does not contain any of the "magic words of finality" evidencing the Legislature's intention to foreclose equitable claims that would be precluded by a "true statute of repose." 658 So.2d at 563-64. The Comerica court disagreed with the Carter court's reliance on the legislative history of section 733.710, noting that legislative history is irrelevant when the wording of a statute is clear. See Comerica, 673 So.2d at 167-68. Further, the Comerica court essentially concluded that the interrelation of sections *1157 733.702 and 733.710 provided the "magic words of finality" found lacking by the Carter court, relying on the fact that section 733.702(5) expressly disclaims any power to extend the two-year time period set forth in section 733.710. Comerica, 673 So.2d at 168. Judge Nesbitt recently reached a similar conclusion, determining that section 733.710 operates as a statute of nonclaim or statute of repose because "section 733.702(5) expressly prohibits any court from granting an extension of the time to file a claim against the decedent's estate on any grounds including fraud, estoppel or insufficient notice of the claim beyond two years following the death of the decedent." See Estate of Johnson, 743 So.2d at 88 (Nesbitt, J., dissenting and concurring); cf. In re Estate of Bartkowiak, 645 So.2d 1082, 1083 (Fla. 3d DCA 1994) (determining that section 733.710 barred Sun Bank from filing a claim outside the two-year time period despite the fact that the personal representative of the estate failed to ascertain that Sun Bank was a creditor and failed to serve the bank with the notice of administration).
After considering the plain language of section 733.710, Florida Statutes (1991), and its interplay with section 733.702, Florida Statutes (1991), we hold that section 733.710 is a jurisdictional statute of nonclaim that automatically bars untimely claims and is not subject to waiver or extension in the probate proceedings.[12] As stated by the Fourth District in Comerica, section 733.710 "obviously represents a decision by the legislature that 2 years from the date of death is the outside time limit to which a decedent's estate in Florida should be exposed by claims on the decedent's assets." 673 So.2d at 167. Accordingly, we now consider the facts of this case in light of our determinations regarding sections 733.702 and 733.710.

C. APPLICATION OF THE STATUTES TO THIS CASE
In this case, Mr. Prockup did not file a document entitled "Statement of Claim" in the Bradley Estate probate proceedings until December 27, 1993, more than three months after first publication of the notice of administration and more than two years after Mr. Bradley's death. Thus, if such document constitutes Mr. Prockup's sole and exclusive claim filed in the probate proceedings, then sections 733.702 and 733.710 would both bar recovery from the Bradley Estate in excess of Mr. Bradley's casualty insurance policy limits.[13]
However, on May 20, 1992, less than eight months after Mr. Bradley's death, Mr. Prockup petitioned the probate court to appoint Mr. May administrator ad litem of the Bradley Estate. That petition, verified by Mr. Prockup and providing the address of his attorney, was the first filing concerning the Bradley Estate. Notably, the file number assigned to the Bradley Estate probate proceedings upon the filing of Mr. Prockup's petition remained the same throughout those proceedings, including all papers filed by the subsequently appointed co-personal representatives. In the petition, Mr. Prockup asserted, in pertinent part, that he represented his wife's estate and had "a cause of action *1158 which arose out of an accident in Holmes County, Florida, on September 21, 1991, in which Inez Prockup sustained fatal injuries. The van in which Mrs. Prockup was a passenger was struck by an automobile driven by Oscar T. Bradley." The probate court granted the relief requested in Mr. Prockup's petition, specifically appointing Mr. May to defend the Bradley Estate regarding a claim for damages arising out of the automobile accident on September 21, 1991, in which Mrs. Prockup was killed.
Later, on March 1, 1993, Mr. Prockup filed another pleading in the probate court, requesting that the court appoint Mr. May personal representative of the Bradley Estate. To support his pleading, Mr. Prockup noted that (1) the probate court already had appointed Mr. May to defend a claim against the Bradley Estate "arising out of the accident on September 21, 1991"; and (2) Mr. Prockup was a "creditor" of the Bradley Estate "by virtue of a wrongful death claim ... which arose out of an automobile accident in Holmes County, Florida, on September 21, 1991," resulting in "fatal injuries" to Mrs. Prockup. The probate court did not appoint Mr. May personal representative of the Bradley Estate, but instead appointed Ms. Johnson and Mr. Fred Bradley co-personal representatives of the estate, but no order was entered as to the status of Mr. May as previously appointed by the same probate court.
In the opinion certifying the present question to this Court, the Eleventh Circuit has suggested that, under Florida law, Mr. Prockup's petition for the appointment of an administrator ad litem and his counter-petition for administration failed to constitute a sufficient statement of claim under section 733.703, Florida Statutes (1991), and Florida Probate Rule 5.490(a). See May, 190 F.3d at 1204-05. In making that determination, the Eleventh Circuit (1) relied in part on our decision in Spohr; (2) noted that the petition and the counterpetition failed to indicate that Mr. Prockup possessed a claim in excess of Mr. Bradley's casualty insurance policy limits; and (3) distinguished this case from the Second District Court of Appeal's decision in Notar v. State Farm Mutual Automobile Insurance Co., 438 So.2d 531 (Fla. 2d DCA 1983). See May, 190 F.3d at 1205. Recognizing that we are not limited in the manner in which we answer the certified question here, see May, 190 F.3d at 1207, we would, as a matter of Florida law, reach a conclusion quite different from that voiced by the Eleventh Circuit.
First, our decision in Spohr does not control the facts of this case. In Spohr, we concluded that the filing of an independent lawsuit within three months of first publication of the notice of administration did not constitute compliance with section 733.702, Florida Statutes (1985). See 589 So.2d at 228. In reaching that conclusion, we stated the following, in pertinent part:
It is important that all interested parties be able to ascertain that claims have been filed against an estate. When served with a complaint, a personal representative would know that a claim was being asserted, but other interested parties might not have such knowledge so as to be able to take the necessary steps to protect their interests.... Even though probate proceedings have now been consolidated into circuit court, it is imperative that the probate file contain every statement of claim.
Id. at 229 (footnote omitted). The key requirement is that a claim be filed in the probate proceeding as opposed to the filing of an independent action. Unlike the creditor in Spohr, Mr. Prockup filed several documents in the actual probate proceedings setting forth the basis of his claim against the Bradley Estate. Indeed, Mr. Prockup's verified petition for the appointment of an administrator ad litem was the first filing in the Bradley Estate, which maintained the same file number throughout the probate proceedings. It is difficult to envision that the language contained in that petition-which was identical to the substantive claim language set forth in the *1159 document entitled "Statement of Claim"-would fail to place interested persons on notice of Mr. Prockup's claim (as personal representative of his wife's estate) against the Bradley Estate. The same is true regarding Mr. Prockup's counter-petition. The substance of a claim against the Bradley Estate was set forth in detail and Florida law in this area should not elevate form over substance.
Second, we also conclude that simply because Mr. Prockup's petition and counter-petition did not indicate whether his claim against the Bradley Estate was for an amount in excess of Mr. Bradley's casualty insurance policy limits does not establish that the claim fails to satisfy the statutory scheme.[14] At the time Mr. Prockup filed his petition and counter-petition, as well as at the time he filed the document entitled "Statement of Claim," damages had not yet been established in the wrongful death/personal injury action against Ms. Murphy and the Bradley Estate. Thus, it was not possible to state in a claim against the Bradley Estate that it was in excess of Mr. Bradley's policy limits. Further, it is well settled that the total failure to file a timely claim against an estate does not prevent a creditor from recovering up to the policy limits of a decedent's casualty insurance. See § 733.702(4)(b), Fla. Stat. (1991); Pezzi, 697 So.2d at 885-86 (determining that sections 733.702 and 733.710 did not bar plaintiffs from stating a cause of action to recover up to policy limits from decedent's casualty insurance even though the plaintiffs did not file a timely claim in the probate proceedings); Kent Ins. Co. v. Estate of Atwood, 481 So.2d 1294, 1295 (Fla. 1st DCA 1986) (stating that the failure to file a claim against an estate within three months of first publication of the notice of administration "bars only the right to enforce any liability of the estate which is beyond the limits of the policy of insurance"). As a result, persons interested in a decedent's estate are on notice that a wrongful death claim is pending against an estate with the amount unliquidated. Just as with any other unliquidated claim, the damages may or may not involve an amount covered by insurance or in excess of the decedent's insurance policy limits.
Third, we find the Second District's decision in Notar persuasive here. In that case, the expectant claimant failed to file a formal statement of claim in the decedent's estate within three years of the decedent's death, as required by section 733.702(1)(b), Florida Statutes (1981) (requiring filing of a claim in an unadministered estate within three years of a decedent's death). See Notar, 438 So.2d at 532-33. Upon learning of the decedent's death, however, the claimant filed a motion for substitution of parties and appointment of personal representative in an already initiated independent action. See id. at 532. In addition, the claimant's attorney filed in probate court a petition for administration of the decedent's estate. See id. The circuit court in the independent action denied the claimant's motion for substitution and appointment, and the probate court denied the claimant's counsel's petition for administration. See id.
On appeal, the Second District addressed whether the claimant's motion in the independent action and petition in the probate court, both filed within three years of the decedent's death, could be considered a valid presentation of claim to satisfy the nonclaim period. See id. at 533. The Second District acknowledged that to present a claim against a decedent, a creditor must file a written statement of the claim indicating the basis of the claim, the amount of the claim, whether the claim is contingent or unliquidated, and, if contingent or unliquidated, the nature of the uncertainty. See id. (citing section 733.703, Florida Statutes (1981)). The *1160 court also recognized that deviations in the form of a claim may be corrected. See id. (citing section 733.704, Florida Statutes (1981)). With these principles in mind, the Second District held that both the claimant's motion in the independent action and the petition in the probate court stated the basis of the claim in a manner sufficient to satisfy the requirements of sections 733.703. See id. After so holding, the Second District noted that because no notice of administration had been filed regarding the decedent's estate, nothing more could have been done to preserve a claim against the decedent's estate.[15]See id. While the Notar court's holding with regard to the motion in the independent action is no longer valid in light of our decision in Spohr, the court's holding concerning the petition for administration remains in effect and is well reasoned.
Finally, similar to the decision in Notar, we would conclude that Mr. Prockup's petition for the appointment of an administrator ad litem and his counter-petition for administration were defective, if at all, only as to the caption on the document, not substance. Section 733.703(1), Florida Statutes (1991), requires a creditor to file a "written statement of the claim" in probate proceedings involving a decedent's estate. The statute does not set forth any requirements regarding the form and content of the claim. See id. Limited requirements can be found in Florida Probate Rule 5.490(a), which provides:
(a) Form. A creditor's statement of claim shall be verified and filed with the clerk and shall state:
(1) the basis for the claim;
(2) the amount claimed;
(3) the name and address of the creditor;
(4) the security for the claim, if any; and
(5) whether the claim is due or involves an uncertainty and, if not due, then the due date and, if contingent or unliquidated, the nature of the uncertainty.
If a claim is defective as to form, then the probate court may allow a creditor to amend the claim at any time. See § 733.704, Fla. Stat. (1991) ("If a bona fide attempt to file a claim is made by a creditor but the claim is defective as to form, the court may permit the amendment of the claim at any time."); Fla. Prob. R. 5.490(e) ("If a claim as filed is sufficient to notify interested persons of its substance but is otherwise defective as to form, the court may permit the claim to be amended at any time.").
When the pleadings filed on behalf of the Prockups in the probate proceeding are compared to the elements of the rule, it becomes evident that all requirements were substantially satisfied. Mr. Prockup's petition and counter-petition clearly stated the basis of his claim-as personal representative of his wife's estate-against the Bradley Estate. Both the petition and counter-petition established that Mr. Prockup was prosecuting a wrongful death action against the Bradley Estate based on the September 21, 1991, automobile accident. As ongoing litigation, it was clear that the damages being sought in such action were undetermined and unliquidated. Under these particular circumstances, it would be placing form over substance to hold that the petition and counter-petition did not satisfy the essential requirements of section 733.703 and rule 5.490(a). See generally 18 Fla. Jur.2d Decedents' Property § 647 (1997) (stating that a "statement of claim need not be in any particular form, and it is sufficient if it states the character and amount of the claim"); 31 Am.Jur.2d Executors and Administrators § 659 (1989) (stating that the "contents of a claim should be liberally construed" and *1161 that "the form of the presentation [of a claim] is of little importance so long as it furnishes sufficient information of the extent and character of the claim").
In light of our analysis regarding the petition and counter-petition, it is clear that Mr. Prockup satisfied the two-year nonclaim period set forth in section 733.710. This is so because Mr. Prockup's petition and counter-petition setting forth the claim in detail against the Bradley Estate were both filed within two years after the date of Mr. Bradley's death. The same cannot be said, however, with regard to satisfying the limitation period set forth in section 733.702(1). Specifically, section 733.702(1) requires that a claim be filed "within the later of three months after the time of first publication of the notice of administration or, as to any creditor required to be served with a copy of the notice of administration, 30 days after the date of service of such copy of the notice on the creditor." § 733.702(1), Fla. Stat. (1991) (emphasis added). The Legislature very specifically added the word "after" in 1988, substituting it for the word "from." See ch. 88-340, § 6, at 1805, Laws of Fla. (amending section 733.702(1)(a), Florida Statutes). As the word "after" is used in the statute, we have no choice but to ascribe to the word its plain meaning.[16] Although it may seem somewhat formalistic to strictly apply the word "after," such was the specific legislative intent. While requiring a creditor to file a claim after publication or service runs counter to the general proposition that claims filed before notice is given to creditors may sufficiently state a claim against an estate, see In re Estate of Tanner, 288 So.2d 578, 581 (Fla. 2d DCA 1974) (permitting the filing of a claim prior to the publication of valid notice to creditors); see generally Dag E. Ytreberg, Annotation, Validity of Claims Against Estate Filed Prior to Publication of Notice to Creditors, 70 A.L.R.3d 784 (1976 & 1999 Supp.), such a result is nonetheless mandated by the clear language used by the Legislature in section 733.702(1). Accord Roberts v. Jassy, 436 So.2d 394, 395 (Fla. 2d DCA 1983) (decrying inequitable and harsh result required by application of section 733.702(1), Florida Statutes (1981)).

III. CONCLUSION
In conclusion, as set forth above, we determine that section 733.702, Florida Statutes (1991), is a statute of limitations that bars untimely claims even if the issue of timeliness is not asserted in an objection in the probate proceedings, but that such limitation may be extended by the probate court. Further we determine that section 733.710, Florida Statutes (1991), is a jurisdictional statute of nonclaim that is not subject to waiver or extension in the probate proceedings. Finally, while we would conclude that Mr. Prockup satisfied the nonclaim period set forth in section 733.710, he did not satisfy the limitation period established in section 733.702(1), and we are not aware of any extension or pending request for extension in any probate court. Accordingly, we return the record in this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
WELLS, C.J., concurs with an opinion, in which HARDING, J., concurs.
*1162 WELLS, C.J., concurring.
I concur in the answer to the certified question, parts A and B. I do not join in part C of the opinion because I believe that it is beyond this Court's jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution.
HARDING, J., concurs.
NOTES
[1] INIC filed a declaratory judgment action in county court in Escambia County, seeking a declaration that the automobile liability insurance policy issued to Mr. Bradley by INIC did not cover his accident with the Prockups. The county court rejected INIC's arguments challenging coverage and ruled against INIC. On February 6, 1997, the circuit court, in its appellate capacity, affirmed the county court's ruling, and on March 25, 1997, the First District Court of Appeal denied certiorari review of the circuit court's ruling on appeal.
[2] The parties have not identified the actual date on which the stipulation was executed, and such information is not in the record before us.
[3] Under Florida law, a party that has obtained a judgment against an insured in excess of the insured's liability policy limits may bring a direct third-party bad faith action against the insurance company that issued the liability policy to the insured. See, e.g., State Farm Fire & Cas. Co. v. Zebrowski, 706 So.2d 275, 277 (Fla.1997) (interpreting section 624.155(1)(b)1, Florida Statutes (1995)); Travelers Ins. Co. v. Perez, 384 So.2d 971, 972-73 (Fla. 3d DCA 1980) (citing Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla.1971)).
[4] Mr. Prockup filed a "Request for Notice and Copies" in the probate proceedings, setting forth his address and indicating that his wife's estate was a "creditor" of the Bradley Estate. The record does not indicate the exact date on which Mr. Prockup filed his request for notice, but the record does show that in August 1993, the circuit court furnished a copy of the request to an attorney for one of the co-personal representatives.
[5] Section 733.308, Florida Statutes (1999), and Florida Probate Rule 5.120 seemingly contemplate that, in general, an administrator ad litem functions in a probate proceeding where no personal representative has been appointed or where the representative has a claim adverse to the estate. Florida jurisprudence has recognized that an administrator ad litem may (1) maintain a wrongful death action on behalf of an estate, see Funchess v. Gulf Stream Apartments of Broward County, Inc., 611 So.2d 43, 45 (Fla. 4th DCA 1992); and (2) function at the same time as a personal representative, with each person being responsible for administering different aspects of an estate. See Woolf v. Reed, 389 So.2d 1026, 1028 (Fla. 3d DCA 1980) (stating that an administrator ad litem "becomes solely responsible to the estate for the administration of that portion of its affairs entrusted to him by the court, and thus supplants in that regard the authority of the personal representative, who continues to be responsible for the administration of all other aspects of the estate's business"). Noting that the parties have not addressed the issue, we express no opinion regarding any possible problems surrounding the representative procedures used in the probate proceeding and wrongful death/personal injury proceeding in this case.
[6] The record does not establish whether the co-personal representatives served Mr. Prockup with the notice of administration consistent with section 733.712(4)(a), Florida Statutes (1991), which provides that a personal representative shall serve "reasonably ascertainable" creditors with "a copy of the notice [of administration] within 3 months after first publication of the notice." See also § 733.701, Fla. Stat. (1991); § 733.702(1), Fla. Stat. (1991); Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 491, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (determining that the Due Process Clause requires that "reasonably ascertainable" creditors receive actual notice). The federal district court did determine, however, that Mr. Prockup had actual knowledge and notice "of the opening of the estate and the time of its opening," and therefore could not claim that his due process rights had been violated, citing In re Estate of Danese, 641 So.2d 423 (Fla. 1st DCA 1994). The federal district court also stated that Mr. Prockup had "actual notice of the administration" of the Bradley Estate.
[7] The 1991 version of sections 733.702 and 733.710 are applicable in this case because Mr. Bradley died on September 21, 1991. However, our ruling here applies equally under the current version of those statutes because (1) the Legislature amended section 733.702 only once since 1991, and that amendment did not effect a substantive change, see chapter 97-102, section 1016, at 1360, Laws of Florida (making language in the statute gender-inclusive); and (2) the current version of section 733.710 is identical to the 1991 version. Compare § 733.710, Fla. Stat. (1999), with § 733.710, Fla. Stat. (1991).
[8] In Barnett Bank, a notice of administration was published for the estate, and the bank thereafter filed a statement of claim within three years of the decedent's death. Thus, the factual circumstances there did not implicate subsection (1)(b) of section 733.702, Florida Statutes (1983), which barred claims against an estate unless filed "[w]ithin 3 years after the decedent's death, if notice of administration has not been published." That subsection of section 733.702 dovetailed with the 1983 version of section 733.710, Florida Statutes, which provided, "Three years after the death of a person, his estate shall not be liable in any cause of action if no letters have been issued in Florida within the 3-year period." Thus, although we held in Barnett Bank that section 733.702 is a statute of limitations, such holding should be correctly confined to the three-month time limitation established in subsection (1)(a) of that statute, not extended to the subsection of the statute we did not address in Barnett Bank.
[9] In 1984, the Legislature added the phrase, "and any such claim shall be forever barred without order of the court" to section 733.705, Florida Statutes, in the portion of such statute relating to the filing of an independent cause of action against the estate after an objection has been lodged against a claim. See ch. 84-25, § 1, at 41, Laws of Fla. In 1986, the Legislature amended section 733.705 by, among other things, clarifying that an objection may be filed within thirty days of the "timely" filing of a claim. See ch. 86-249, § 1, at 1881, Laws of Fla.
[10] Ordinarily, unless a party asserts a statute of limitations as an affirmative defense in its answer, the statute is waived. See, e.g., Fla. R. Civ. P. 1.110(d); Fla. R. Civ. P. 1.140(h)(1). In cases such as this one, however, where the time period set forth in section 733.702 has not yet expired when the answer is filed, the party relying on the statute should move the court to allow the filing of a supplemental pleading to assert the statute as an affirmative defense. See Fla. R. Civ. P. 1.190(d) ("Upon motion of a party the court may permit that party, upon reasonable notice and upon such terms as are just, to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."); Fla. R. Civ. P. 1.190(e) ("At any time in furtherance of justice, upon such terms as may be just, the court may permit any ... pleading ... to be amended or material supplemental matter to be set forth in an amended or supplemental pleading.").
[11] No party petitioned this Court for review in either Comerica or Estate of Petz, despite the presence of a certified conflict.
[12] As with section 733.702, we determine that an estate may waive the time period set forth in section 733.710 in a separate action outside of the probate proceedings. However, unlike section 733.702, a creditor that has obtained a judgment in a separate action cannot recover against the estate unless the creditor has filed a claim in the probate proceedings within two years of the decedent's death. This is so because the probate court lacks the authority to extend the time period set forth in section 733.710.
[13] Sections 733.702 and 733.710, Florida Statutes, do not bar a creditor from stating a cause of action to recover up to policy limits from decedent's casualty insurance even though the creditor has not filed a timely claim in the probate proceedings. See § 733.702(4)(b), Fla. Stat. (1991); Pezzi v. Brown, 697 So.2d 883, 885-86 (Fla. 4th DCA 1997).
[14] Indeed, the document entitled "Statement of Claim" did not indicate whether Mr. Prockup's claim against the Bradley Estate was for an amount in excess of Mr. Bradley's casualty insurance policy limits because it was unliquidated.
[15] The federal district court and the Eleventh Circuit distinguished this case from Notar based on the Second District's statement that "because no notice of administration of Dombrowsky's estate had been filed, Woodruff and Notar could have done no more to preserve their rights against the estate." Notar, 438 So.2d at 533.
[16] The legislative history of chapter 88-340, Laws of Florida, confirms that the Legislature specifically intended "after" to be used in accordance with its plain meaning:

Claims are required to be filed within three months "after" the publication of the notice of administration, which would defeat claims filed within three months "prior" to the publication. If a claim is not timely filed, it will be barred without the requirement of an objection being raised as to its timeliness.
Fla. H.R. Comm. on Jud., HB 645 (1988), Staff Analysis & Economic Impact Statement 3 (April 7, 1988) (on file with comm.).